## NEEL, administrator, *et al. v.* POWELL *et al.*

1. Capacity to make a deed or a contract is not identical with testamentary capacity. But where the presiding judge, in charging the jury on the subject of the mental capacity necessary to make a contract or deed, illustrated it by reference to capacity to make a will, and the charge to which exception was taken was not such as was calculated to mislead the jury or to prejudice the rights of the complaining party, it will not require the grant of a new trial.

2. The evidence authorized a charge on the subject of fraud, and much, if not all, of the instructions given on that subject were pertinent and correct. If any portion of the charges complained of were not adjusted to the evidence, they have not been specifically pointed out, nor has that fact been made to appear.

3. There was sufficient evidence to support the verdict.

Submitted January 14,—Decided June 9, 1908.

Equitable petition. Before Judge Fite. Gordon superior court. August 7, 1907.

Mrs. S. C. Powell and Mrs. Malinda Patterson brought their equitable petition against Mrs. Malissa Hood and others. The plaintiffs were two of the daughters of Lemuel Hood, deceased, and the defendants were his widow, his other children, and his administrator. The object of the petition was to cancel deeds which had been made by the decedent in his lifetime, by which it was alleged that he had made provision for his other children to the exclusion of the plaintiffs. It was also alleged, that these deeds had been procured from him by fraud and duress, when he was old and feeble, and that at the time of making them he had not sufficient mental capacity to do so. The administrator was made a party defendant, because it was alleged that he failed and refused to administer the land involved as a part of the estate of the intestate, or to bring suit to cancel the deeds. The plaintiffs prayed that the deeds be cancelled, that the land be administered as a part of the estate of their deceased father, and that they recover an undivided interest therein. The defendants denied that the deeds were obtained by fraud or undue influence, or that the testator was mentally incapable of making them. They alleged that a contract was made by him with certain of his children, by which the latter should pay, during his and his wife's lifetime, enough to support them, and that he made deeds to them; but they denied that there was any fraud or undue influence in procuring the contract or the deeds. The jury found for the plaintiffs. The defendants moved for a new trial, which was denied, and they excepted.

*F. A. Cantrell, T. W. Skelly,* and *R. J. & J. McCamy,* for plaintiffs in error. *Starr & Erwin* and *J. M. Neel,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. Besides the general grounds that the verdict was contrary to law and the evidence, the motion for a new trial contained thirteen grounds complaining of rulings of the court. Most of them were grouped about one central point, from which numerous rulings radiated. This was that the presiding judge devoted a portion of his charge to the subject of testamentary capacity, and what would be sufficient proof of incapacity, as well as to the subject of fraud or undue influence which would authorize a jury to find against a will when offered for probate. The main criticism upon these charges was that they were inapplicable to the case. While counsel for plaintiffs in error did not in their briefs abandon any of

the grounds of the motion, they dealt with the complaint of the charges in the aggregate, and only referred specifically to a few grounds.  In the view which we take of the charge, we will pursue a somewhat similar course.  The presiding judge informed the jury, that this was not a will, but a disposition of property by deed; that the law ordinarily required more strength of mind, more intellect, to make a contract than to make a will; that he charged this provision of law, in connection with others, that they might see just what the law required in order to make a will; that the law required greater strength of mind to make a contract than to make a will, but if the disposition of property was in the nature of a will, then it required the same amount as to make a will.  After this introduction, he proceeded to read to the jury various sections of the code and to explain principles touching testamentary capacity, the effect of lunacy, monomania, fraud, and undue influence upon the making of a will.

The capacity necessary for the making of a will and that required for the making of a deed are not identical.  If one is wholly without reason or understanding, he can not make either a deed or a will.  But the test and measure of testamentary capacity is not the same as that of contractual capacity.  A man may be incapable of making a will, a deed, or a contract, but a common standard can not be fixed in reference thereto.  Some courts have held that it requires more capacity to make a will than a contract, some the same amount, and some less.  The last is the more common statement.  Possibly proof of contractual capacity may furnish prima facie evidence of testamentary capacity.  Our own code declares that "An incapacity to contract may coexist with a capacity to make a will."  Civil Code, § 3268.

In Page on Wills, 112, it is said:  "This divergence of judicial opinion is, of itself, enough to suggest the view that is undoubtedly the true one, and that now obtains by the weight of authority.  This view is that testamentary capacity and contractual capacity are so different in their nature that it is impossible to use one as a test for measuring the other, or to say that the existence of one either proves or disproves the other's existence conclusively."  See also Gardner on Wills, 106; *Slaughter* v. *Heath,* 127 *Ga.* 747, 749-751 (57 S. E. 69).  On the subject of capacity to make a deed, it is said in Devlin on Deeds (2d ed.), § 69:  "If

the grantor has sufficient mental ability to comprehend what he is doing, and to understand the nature of his act, his deed must be deemed that of a sane person." And see section 67 et seq. In *Richardson* v. *Adams*, 110 *Ga.* 425, 427 (35 S. E. 648), Chief Justice Simmons, in referring to a case where a very old man in feeble health made voluntary deeds to certain of his children, grandchildren and great-grandchildren, and seemingly wished by such conveyances, in a sense, to become the administrator of his own estate, said: "Speaking for myself, I think that in such a case the mental capacity of the grantor should be measured by the rule laid down in the books as applying in cases of wills." This was said in discussing the case, and was not a formal ruling. While the facts may be such as to make an effort on the part of an aged and infirm person approaching his end, by voluntary deeds to provide for the disposition of his estate, very similar to the situation of one making a will, yet, it is of doubtful propriety in terms to charge that the measure of testamentary capacity is applicable as a standard to capacity to make a deed. To do so involves an inquiry into whether the deeds were voluntary, what was the condition of the man, and whether his purpose was in effect to administer his own estate. It is better to let the capacity to do a particular act be measured by the standard applicable to that act, and not by the standard applicable to some other act. But it is not error, in instructing the jury as to the mental capacity necessary for the making of a deed, to refer, by way of illustration, to that required for the making of a will. Here the presiding judge informed the jury that the two were not necessarily the same, that generally the capacity to make a will did not include the capacity to make a deed, but that testamentary capacity might coexist with a lack of contractual capacity, though he was of the opinion that, if the disposition of property was "in the nature of a will," the capacity required would be the same as for the making of a will. No exception was taken to this last statement, and we do not hold whether there was any error in it or not. If the correct rule be applied, illustrations of mental capacity in regard to other subjects will not constitute error, unless so given as to be calculated to confuse or mislead the jury. In Boughton *v.* Knight, L. R., P. and D. 64, Sir J. Hannen delivered a most interesting charge on the subject of insanity and testamentary capacity, and illustrated the mean-

ing of the term by reference to the criminal law, the law of contracts, the capacity to give testimony, and insanity as affecting marriage; but these illustrative references were clearly given so as to aid rather than confuse the jury. The learned judge arrived at a somewhat different conclusion from the rule in this State, stating that he thought it required more mental capacity to comprehend a general scheme of distribution of an estate than to understand a single transaction. Under our exceedingly strict law, prohibiting any expression or intimation of opinion by the presiding judge, he has not the same freedom of summing up in this State as in England; and the decision cited is only referred to passingly as one where the use of illustrations well put were calculated to aid the jury in understanding the subject in hand. Illustrations which are apt and clearly made, and not so extended as to withdraw the attention of the jury from the issue to be determined, are not generally erroneous, and may sometimes be beneficial. Illustrations which are inapt or irrelevant, or are so made as to confuse or mislead the jury, are to be avoided. Illustrations of the latter class shed darkness upon a case rather than light. In the present case an examination of the entire charge satisfies us that the charges complained of on the subject of testamentary capacity were not such as to injure the defendants, or to require a reversal.

2. Exception was taken to the giving of certain charges on the subject of fraud, the ground of error alleged being that they were inapplicable to the case and tended to confuse the jury. Several of the charges so complained of were in the language of the sections of the code defining fraud, actual and legal, stating how fraud might be consummated, and concluding with the familiar principle that fraud may not be presumed, but, being subtle, slight circumstances may be sufficient to carry conviction of its existence. Error was also assigned on the giving of certain charges on the subject of undue influence. There was sufficient evidence to authorize the submission to the jury of the questions of fraud and undue influence. Much of what was complained of was clearly authorized. If there were any parts which were not adjusted to the evidence, they are not pointed out, nor do they plainly appear. We do not perceive anything in them requiring a reversal.

3. There was sufficient evidence to support the finding of the

jury. There was apparently an unseemly contest over the property of the father of the plaintiffs, begun before his death, accompanied by those jealousies, bickerings, and animosities which the desire for money or property too often brings into the bosom of a family. We are not declaring what we would have found, had we been the jury. But we think that the jury were authorized to find as they did. *Judgment affirmed. All the Justices concur.*