## TALTON et al. v. RICHARDSON et al.

1. This was a suit to have certain deeds declared void and to have them canceled upon the ground that the maker of the deeds did not have sufficient mental capacity to execute a valid deed. And in his charge to the jury the judge gave certain instructions which would probably lead the jury to conclude that the capacity to contract was identical with the capacity to make a valid will; and this identity does not exist. Such instructions were erroneous.

2. Error is assigned upon the following charge of the court: "If the testimony is such that you can not determine where the preponderance of the testimony is, in that event you would find for the defendants." It is here stated, in effect, as a general, universal rule, that if the members of the jury trying the case could not agree on which side the evidence was preponderant—if some thought the preponderance of the evidence was in favor of the contentions of the plaintiffs, and still others that it preponderated in favor of the defendants, nevertheless they should find a verdict in favor of the defendants. Manifestly such is not the rule. In such a case as that supposed, if the jurors adhered to their opinions as to which side had a preponderance of the evidence, they could only fail to agree. Certainly the court could not tell them in such a case to find a verdict in favor of the defendants.

No. 5697. JANUARY 14, 1927.

Equitable petition. Before Judge Hutcheson. DeKalb superior court. October 9, 1926.

*A. E. Wilson,* for plaintiffs.

*F. A. Hooper & Son, Branch & Howard,* and *P. K. Burns,* for defendants.

BECK, P. J. Returnable to the June term, 1923, of the superior court of DeKalb County, Mrs. Helen E. Talton and Miss Ruth M. Tuxworth, plaintiffs in error herein, filed their equitable petition against Mrs. Mabel T. Richardson and Robert Tuxworth, individually and as administratrix and administrator, respectively, of the estate of William Tuxworth, deceased, and J. J. Richardson, alleging that they, plaintiffs, and Mabel T. Richardson and Robert Tuxworth were brothers and sisters, being the children of William Tuxworth, deceased, and his sole heirs at law, and that defendant J. J. Richardson was the husband of Mabel T. Richardson and the son-in-law of the said William Tuxworth, deceased. In that peti-

Cancellation of Instruments, 9 C. J. p. 1258, n. 68.
Deeds, 18 C. J. p. 220, n. 72.
Evidence, 23 C. J. p. 20, n. 45.
Insanity, 32 C. J. p. 727, n. 38 New.
Trial, 38 Cyc. p. 1516, n. 57; p. 1753, n. 42 New.

tion it was alleged that William Tuxworth died November 2, 1922; that for several months prior to his death he resided in the home of Mabel T. and J. J. Richardson; that he was a man 75 years old, suffering from cancer of the stomach; that by reason of his senility and the disastrous effects of his malady he was for some time prior to his death mentally and physically incapacitated for the transaction of business; that at a time when he, the said William Tuxworth, was so weak as to be incapable of comprehending his acts, said defendants, Mabel T. Richardson and J. J. Richardson, prepared, or caused to be prepared, certain warranty deeds covering property owned by the said William Tuxworth, as is described and set forth in said petition, which said deeds were in favor of themselves and the other defendant, Robert Tuxworth, and that after thus preparing said deeds they held the maker of the deeds up in bed and obtained his signature to them, the said Mabel T. Richardson guiding and supporting his hand in the execution thereof.

It was further alleged in the petition that although the deeds executed as above set forth each specified a consideration of $2,-500.00, no such consideration was paid to the grantor, and that in thus obtaining said deeds said defendants imposed upon the said William Tuxworth, took advantage of his weakened physical and mental condition at a time when he was unable to resist and incapable of understanding or knowing what he was doing, and thereby perpetrated a fraud on the said William Tuxworth and upon plaintiffs in error herein, his heirs at law. Other allegations were made in the petition to show that the deeds were void and should be set aside. Plaintiffs sought cancellation of the deeds and to have the property conveyed by them declared to be the property of the estate of the grantor.

To this petition the defendants, who are the defendants in error here, filed their answer denying the facts alleged in the petition which tended to show the invalidity of the deeds and that they were executed while the grantor was mentally and physically incapable of contracting. In the answer it is averred that William Tuxworth was in control of his faculties and well knew what he was doing at the time of executing the deeds. Other facts and circumstances are set forth in the answer to meet the contentions of the plaintiffs and to show that they are not entitled to the relief sought. Subsequently to the filing of the suit the petition was

dismissed as against Mabel T. Richardson and Robert Tuxworth in their official capacity, and proceeded against the individuals named.

At the trial, after the introduction of evidence and the charge of the court, the jury returned a verdict in favor of the defendants, and the plaintiffs made a motion for a new trial, which was over-ruled and they excepted. The motion is based upon the usual general grounds and certain special grounds contained in an amendment to the original motion.

1. In the first special ground of the motion error is assigned upon the following charge of the court: "Gentlemen, I will read to you a section of the Code: 'An incapacity to contract may coexist with a capacity to make a will; the amount of intellect necessary to constitute testamentary capacity is that which is necessary to enable the party to have a decided and rational desire as to the disposition of his property. His desire must be decided, in distinction from the wavering, vacillating fancies of a distempered intellect. It must be rational, in distinction from the ravings of a madman, the silly pratings of an idiot, the childish whims of imbecility, or the excited vagaries of a drunkard.'" In the second special ground complaint is made of the following charge: "I have read you, gentlemen, the section that gives you the amount of capacity to make a will; that is, the capacity of one to give away his property." And in the third special ground error is assigned upon this excerpt from the charge: "I charge you, gentlemen, further, that in order for a party to have capacity to make a will, he must have sufficient mental ability to comprehend; that is, to know what he is doing, and to understand the nature of his acts. If he had that, gentlemen, the law presumes that he had capacity; that is, if he knew what he was doing, if he had mental capacity to comprehend and know what he was doing, and the nature of his acts, he would be capable of making a voluntary deed."

While the instructions just quoted might properly be given to a jury in the trial of an issue as to whether or not a deed in question is valid or invalid, where it is contended, in a suit to have such deed set aside, that the grantor was mentally incapable of contracting, nevertheless it was error for the court to give such instructions without pointing out that these principles relating to

the capacity to make a will were given as illustrations and to aid the jury in ascertaining whether or not the alleged grantor was capable of executing a deed. *Neel* v. *Powell,* 130 *Ga.* 756 (61 S. E. 729). We can not say that all of the deeds in question were voluntary deeds, as counsel for plaintiffs in error contends they were under the evidence. If they had been purely voluntary deeds, then possibly the giving of these charges would not have been such error as to require the grant of a new trial; though we do not rule upon that question. In the case of *Richardson* v. *Adams,* 110 *Ga.* 425 (35 S. E. 648), it was said by Chief Justice Simmons: "A deed will not be set aside because of eccentricity or weakness of intellect. 'If the grantor has sufficient mental ability to comprehend what he is doing, and to understand the nature of his act, his deed must be deemed that of a sane person.' 1 Devlin, Deeds (2d ed.), § 69. It must be remembered, too, that these were voluntary deeds, made by a very old man in feeble health to certain of his children, grandchildren, and great-grand-children,—a man whose increasing age and diminishing strength doubtless warned him that his end was near,—and that he might have wished to thus convey his property and so become in a sense the administrator of his own estate. Speaking for myself, I think that in such a case the mental capacity of the grantor should be measured by the rule laid down in the books as applying in cases of wills. While it takes a higher order of understanding to make a deed or other contract than to make a will, it is largely because in the case of a contract there must be a consideration and each party must have sufficient capacity to know the value of the con-sideration moving to each. In the deeds in the present case the consideration was the natural love and affection of the grantor for the grantees, and the conveyances served as a sort of testamentary disposition of the property." But in the present case we can not say as a matter of law that the deeds in question were voluntary deeds, though apparently one of them was, if not two; and possibly it might have been shown that all were, if the facts had been fully developed. But we must recognize the rule, stated more than once by this court, that the capacity to make a deed or a contract is not identical with testamentary capacity; and the charges which we have set forth above, in the absence of explanations in other parts of the charge to the jury, would necessarily tend to lead the

jury to conclude that the mental capacity requisite to make a deed, a valid contract, or a will, is identical. The charge of the court is not sent up as a part of the record, and we can not say that the error of the court in giving these charges, without instructing the jury that these principles were stated to them that they might use them as illustrations in considering the question as to whether an alleged grantor had the capacity to make a deed, was harmless; for we can not agree with counsel for defendants in error that the evidence demanded a finding in favor of the defendants. And here, as we generally do, where cases are remanded for a new trial, we refrain from expressing an opinion as to the weight of the evidence. The weight of the evidence is for the jury, under proper instructions from the court, notwithstanding the fact that a larger number of witnesses gave testimony favorable to the contentions of the defendants than did to support the contentions of the plaintiffs.

2.    The ruling made in the second headnote requires no elaboration.            *Judgment reversed.    All the Justices concur.*