YARBROUGH *et al. v.* YARBROUGH.

No. 15764.    MAY 16, 1947.    REHEARING DENIED JUNE 13, 1947.

*D. W. Mitchell, R. Carter Pittman, Hardin & McCamy, A. E. Wilson, A. E. Wilson Jr.,* and *MacDougald, Troutman, Sams & Branch,* for plaintiffs.

*Neel & Ault* and *J. G. B. Erwin,* for defendant.

HEAD, Justice. (After stating the foregoing facts.) ■ A caveator to the probate of a will can admit a prima facie case in favor of the propounder, and in such case is entitled to open and conclude. *Wood* v. *Davis,* 161 *Ga.* 690 (131 S. E. 885) ; *Tilley* v. *King,* 190 *Ga.* 421 (9 S. E. 2d, 670). In the instant case, the caveatrix amended her pleadings by admitting that the instrument offered for probate as the will of Hiram Yarbrough was signed by him in the presence of three witnesses; that they signed as witnesses in his presence and in the presence of each other; and that he was, at the time of its execution, prima facie of testamentary capacity (that is, he was at that time apparently of sound mind and acting under his own accord and without any undue influence). The allegations made were sufficient to admit a prima facie case in favor of the propounder of the will, and entitled the caveatrix to the opening and conclusion before the jury. The court did not err in overruling the demurrer to the amended caveat on this ground.

■ The caveat as amended is also attacked by demurrer, upon the ground that its allegations as a whole are insufficient to show any legal reason why the will should not be probated, and because paragraphs 2 and 3 thereof are inconsistent with each other, since paragraph 2 alleges that the maker of the purported will, at the time it was executed, was afflicted with monomania respecting the caveatrix; and paragraph 3 alleges that he was, at the same time,

afflicted with monomania respecting her mother; and each paragraph alleges that the purported will resulted from and was connected with such monomania. The special demurrers, as we have pointed out in the statement of facts, attack the allegations contained in the various paragraphs of the caveat as amended. Since the issue of general testamentary capacity has been eliminated from the case, we will not deal with the demurrers as they relate thereto, but will consider the sufficiency of the amended caveat as against both the general and special demurrers on the issue of monomania.

In *Wetter* v. *Habersham,* 60 *Ga.* 193, this court said: "The heir at law may complain of any monomania which really exists, and which injures him; that is, which produces the will and thus diverts the inheritance from him, whether the monomania be directed against him or another; but where there is really no monomania, or where, though monomania exists, the will is not the product of it, then the heir is not injured, and if it appears that the testament does speak the wishes of the testatrix, unbiased by monomania, it ought to stand." The caveat, as amended, alleges with sufficient certainty that the maker of the purported will, at the time it was executed, was afflicted with a monomania directed against both the caveatrix and her mother, and that his will resulted from and was connected with this diseased condition of his mind; and it makes no difference whether such insane delusion was directed against the caveatrix or her mother, or both, since the heir at law may complain of any monomania which really exists, and which injures her; that is, which produces the will and thus diverts the inheritance from her.

In *Dibble* v. *Currier,* 142 *Ga.* 859 (83 S. E. 949, Ann. Cas. 1916C, 1), it was said: "The allegations that the mind of the testatrix became unbalanced and incapable of reasoning with reference to her marriage and the events associated with or arising from it, that she became imbued with the hallucination that her heirs, who refused to comply with her insane desires, were not of her blood or family, were not related to her, and were not entitled to her affection or treatment as kinsmen, go beyond allegations of prejudice, passion, illogical reasoning, unfounded suspicion, or the like, and set up an actually diseased condition of the mind, and delusions arising therefrom, in other words, partial insanity or monomania." See also *Davis* v. *Aultman,* 199 *Ga.* 140 (33 S. E. 2d, 317).

The allegations of the amended caveat were sufficient to withstand the general demurrer, and the court properly overruled the grounds of special demurrer.

■ Complaint is made that the court erred in charging the jury as follows: ".I charge you that, in case of doubt, as to the extent of the alleged monomania or partial insanity, if it existed, and as to its effect in bringing about the disposition of the testator's property, shown by the will, the reasonableness or unreasonableness of the disposition of his estate should be considered by you and given much weight in the decision of such question. However, if no such doubt exists, the reasonableness or unreasonableness of the will should not .be considered." It is urged that this portion of the charge was error, since (1) the issue of general testamentary capacity had been withdrawn from the jury's consideration and they were not authorized to consider whether the will was reasonable or unreasonable; (2) a charge that the jury should give much weight to the reasonableness or unreasonableness of the will, even if a charge on that principle of law were applicable, placed too much weight and .importance on that principle, and precluded the jury from giving it the consideration which they thought it was entitled to; and (3) the .fact that the charge was actually given caused the jury to believe that the court thought they should give "great emphasis, weight, and importance" to the reasonableness or unreasonableness of the disposition of testator's estate.

In *Dyar* v. *Dyar,* 161 *Ga.* 623 (131 S. E. 535), this court approved a charge in the following language: "I charge you that in case of doubt as to the extent of the alleged monomania or partial insanity if it existed, and as to its effect in bringing about the disposition of the testator's property, shown by the will, the reasonableness or unreasonableness of the disposition of his estate should be considered by you in the decision of such question." In the *Dyar* case, the court also charged that the reasonable or unreasonable disposition of the testator's estate should have *much weight* with the jury in its decision on the question. See the Code, § 113-205.

In *Evans* v. *Arnold,* 52 *Ga.* 170 (4), it was stated: "On the propounding of a will, where the question .is insanity, monomania, or undue influence, the unreasonableness of the disposition of the will is always a question to be considered by the jury." .A reasonable

disposition of property, without more, strongly indicates mental capacity sufficient to make a will. An unreasonable disposition of property may indicate a lack of mental capacity to make a will. It follows that a reasonable or unreasonable disposition of property, regardless of the nature of the insanity or inability alleged, should be given much consideration by the jury, if any doubt exists from the evidence as to the testator's ability to make the alleged will. "The reasonableness or unreasonableness of a will, while a legitimate subject of investigation by a jury in case of doubt as to the testator's capacity to make a will, is not to be considered until such a doubt has been first created by other evidence." *Griffin* v. *Barrett,* 183 *Ga.* 166 (187 S. E. 828).

The charge complained of in the present case was proper, even though the only issue submitted to the jury was whether or not at the time the testator executed his purported will he was afflicted with monomania from which the will resulted, since there was ample evidence to create in the minds of the jury a doubt, at least, as to the testator's mental capacity to make the alleged will.

■ In special ground 2, it is contended that the court erred in giving this charge: "I give you in charge § 113-202 of the Code of Georgia: 'An incapacity to contract may co-exist with a capacity to make a will; the amount of intellect necessary to constitute testamentary capacity is that which is necessary to enable the party to have a decided and rational desire as to the disposition of his property. His desire must be decided, in distinction from the wavering, vacillating fancies of a distempered intellect. It must be rational, in distinction from the ravings of a madman, the silly pratings of an idiot, the childish whims of imbecility, or the excited vagaries of a drunkard.' " The complaint directed against this charge is that, the court having held that the testator had a general capacity to make a will, the charge tended to confuse and mislead the jury as to the remaining issue of monomania.

The case of *Talton* v. *Richardson,* 163 *Ga.* 553 (136 S. E. 526), is relied upon as authority for the position here taken. That case involved the validity of a deed and the mental capacity necessary to make such a contract. This court in that case held that it was error to charge § 113-202, since it might have confused the jury and probably led them to conclude that a capacity to contract was identical with the capacity to make a valid will. In the instant

case the capacity to contract, of course, is not involved, and the *Talton* case is clearly distinguishable on its facts.

A part of Code, § 113-202 is applicable on the question of monomania, to wit: "The amount of intellect necessary to constitute testamentary capacity is that which is necessary to enable the party to have a decided and rational desire as to the disposition of his property." A decided and rational desire does not exist where the testator is partially insane, and the will is in any way the effect or result of that insanity. *Gardner* v. *Lamback*, 47 *Ga*. 133, 134 (5). The remainder of § 113-202 is applicable to general insanity. In determining whether or not such insanity exists, the test is stated in that part of the section first quoted, that the testator must have a decided and rational desire as to the disposition of his property. In this case, the caveatrix was not required to prove that the diseased condition of the mind of the testator amounted to the ravings of a madman, the silly pratings of an idiot, the childish whims of imbecility, or the excited vagaries of a drunkard. She was only required to prove a partial insanity or monomania and that the will was the effect or result of such monomania. Thus, the jury, if confused, might have placed on the caveatrix a greater burden than she was required to carry, but this is not a matter which can properly be a basis of complaint by the propounder.

Was there confusion in the minds of the jury to the extent that they believed that evidence of general insanity would authorize a verdict against the will? Such contention is untenable. Subsequently to the charge complained of, the judge devoted approximately three pages of his charge to monomania, and definitely and positively instructed the jury that the sole issue which they were to try and determine by their verdict was that of monomania or no monomania, will or no will. It is therefore impossible for the writer to see how reasonable, intelligent jurors could have been confused as to the sole remaining issue in the case. It is not ordinarily cause for a new trial that the judge gives in charge to the jury an entire Code provision, only a part of which is applicable to the case under consideration. *Hall* v. *Burpee*, 176 *Ga*. 271 (168 S. E. 39).

■ In special ground 3, error is assigned upon a portion of the charge, as follows: "I charge you that, to make a will, the testator must be capable of bringing into mental review, with approximate

accuracy, the property subject to his testamentary disposition, as well as his family relations, and of comprehending the claims and obligations naturally suggested by such review." It is contended that this charge was erroneous and prejudicial, in that it imposed a greater burden upon the propounder than that imposed by law; it was erroneous and prejudicial, since it referred to claims and obligations of the testator when there could be no claims nor any legal obligation on the testator to leave his property to anyone; and such instructions could have no relation to any issue on the alleged monomania, and therefore tended to confuse the minds of the jury.

The charge as given is in the exact language of this court in *Ragan* v. *Ragan,* 33 *Ga. Supp.* 106 (4). The principle stated in the charge given is applicable on any issue of insanity in a caveat to a will, and while monomania is "insanity only upon a particular subject, and with a single delusion of the mind" (2 Bouvier's Law Dictionary, 3rd ed., p. 2241), it may nevertheless so limit the testamentary capacity as to prevent the testator from bringing into review with approximate accuracy the property subject to his will, his family relations, and the obligations naturally suggested by such review. It need not be shown that the monomania affected all persons and all property of the testator. If the will is the effect and result of monomania as to one person only, it can not be said that the testator was capable of bringing into mental review his family relations and the claims or obligations naturally suggested by such review. The instruction here complained of was affirmed and approved by this court in *Everitt* v. *LaSpeyre,* 195 *Ga.* 381 (24 S. E. 2d, 381). The charge is not subject to the criticism made.

■ On direct examination, the caveatrix was asked the following question: "How did your grandmother treat you?" Over objection that it was "immaterial and irrelevant," the witness was permitted to testify, "My grandfather and grandmother treated me very nice." In *Barrett* v. *Barrett,* 177 *Ga.* 195 (170 S. E. 70), it was held that an objection to testimony upon the ground that it was irrelevant and immaterial is an insufficient ground to authorize the grant of a new trial.

■ Over objection that he was an incompetent witness, because any conversation he may have had with the testator regarding his

will was a privileged one between attorney and client, or one in contemplation of such relation, Judge Ingram, an attorney of the Cartersville bar, was permitted to testify in regard to a conversation which he had with the testator about the middle of August, 1941. In substance he said: The testator came to the office of the witness and discussed with him provisions which were supposed to be contained in a will that the testator had previously had prepared. When the will was presented to the witness for examination, he found that the provisions actually contained in the will and those which the testator had represented as being in it were in nowise the same or related. He further testified that it was his opinion, based on his observation of the testator, and conversations with him, that "he was totally incapable of having any business transactions."

Over the same objection, Mr. Erwin, an attorney of the Calhoun bar, was permitted to testify about a conversation he had with Mr. Yarbrough during the summer of 1941 concerning the will. Among other things, he testified: "As to whether or not he gave any reason why he didn't want her [Mrs. Oliver Yarbrough] to have anything to do with his estate and why he objected to Mrs. Oliver Yarbrough and what he had against her—well, he told me that Mrs. Yarbrough was trying to get his property, as I understood, the storehouse, and he. also said the soda fount in the storehouse belonged to him, and she sought to claim that, and for those reasons, that was two of the reasons he gave why he didn't want her to have anything to do with his property, wanted to make provisions some way so she couldn't have anything to do with it." The witness further testified: "As to what my opinion is as to his mental condition and particularly when he spoke of his daughter-in-law—well, I thought he was physically and mentally very weak. Regarding Mrs. Yarbrough, the discussion of his daughter-in-law, the long conversation I had with him in regard to her, matters connected with this proposed will, as to what was and is my opinion as to his sanity upon the subject of Mrs. Yarbrough when her name came up—well, I don't think he was sane upon that subject."

In a consideration of this assignment of error, it should be kept in. mind that in neither instance did the attorney who was permitted to testify actually represent the alleged testator, and the

record does not affirmatively show that the employment of either attorney was really contemplated. But assuming that the relation of attorney and client did actually exist, they were not incompetent witnesses to testify as they did in the instant case. The rule that communications between an attorney and his client are privileged, and that the attorney is an incompetent witness to testify thereto, can not be invoked for the benefit of other persons who are strangers to such relationship. *O'Brien* v. *Spalding,* 102 *Ga.* 490 (31 S. E. 100, 66 Am. St. R. 202). In no sense can the testator be called the "other party," in opposition to either the propounders or the caveatrix in this proceeding. *Brown* v. *Carroll,* 36 *Ga.* 570. Nor can it be said, in a controversy of this nature, that the attorney, who may have given professional advice concerning the will, is called upon to testify "for or against" the interests of his client's estate. On the contrary, the proceeding is simply one in which certain persons claiming under, and not adversely to, the "client" seek to have an investigation made into the circumstances attending the execution of the instrument offered for probate, in order that their rights in the premises may, as against the persons represented by the propounder, be finally adjudicated. It is a proceeding provided for and sanctioned by law, in which it is necessarily contemplated that the whole truth shall be elicited from every reliable source, to the end that full and complete justice may be done, not only to the living, but to the dead. Therefore it was not erroneous for the court to overrule the objection made to the competency of the witnesses, and consequently there is no merit in the assignment of error. *Fuller* v. *Wood,* 137 *Ga.* 67 (4) (72 S. E. 504); *Waters* v. *Wells,* 155 *Ga.* 446 (5) (117 S. E. 322); *Barrett* v. *Barrett,* 177 *Ga.* 195 (170 S. E. 70).

■ Over the objection—"Your Honor, I think that question is what you might term a monstrosity; I think it calls for a legal conclusion, undertaking to adjudicate this entire litigation; I think it is immaterial and irrelevant, calling for a legal conclusion, undertaking to pass upon the testamentary capacity from a legal construction, and I move that it be suppressed"—Dr. Howell, a witness for the caveatrix, who had never known the testator, in answer to a lengthy hypothetical question which fairly summarized the delusions of the testator as shown by the evidence, testified that it was his opinion, assuming that the statements contained

in the question were true, that "the man who made that will was insane and his insanity of a paranoia type; by paranoia type I mean one who is more or less of a monomaniac." On direct examination, he further said: "As to what I would say about his paranoia as related to his daughter-in-law, Mrs. Oliver Yarbrough, well, in your question that seemed to be the one subject on which he was mentally unbalanced and on which he was insane, she was the one persecuting him. And on that particular subject it is my opinion he was insane if these things are true."

"The opinions of experts, on any question of science, skill, trade, or like questions, shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." Code, § 38-1710. Since the objection made did not question the medical experience and qualifications of Dr. Howell, it must be assumed that counsel conceded that the witness was qualified as an expert to answer the question. An expert may testify as to his opinion in response to a hypothetical question which assumes facts identical with the testimony in the case then on trial. *Seaboard Air-Line Ry.* v. *Bradley,* 125 *Ga.* 193 (4) (54 S. E. 69, 114 Am. St. R. 196). The hypothetical question propounded in the instant case was not subject to the objection interposed, and the court did not err in allowing the testimony. *Espy* v. *Preston,* 199 *Ga.* 608 (34 S. E. 2d, 705).

In special ground 8, complaint is made that the court erred in charging the jury as follows: "I give you in charge § 113-204 of the Code of Georgia. An insane person cannot generally make a will. A lunatic may, during a lucid interval. A monomaniac may make a will, if the will is in no way the result of or connected with the monomania. In all such cases it must appear that the testament speaks the wishes of the testator unbiased by the mental disease with which he is affected." It is contended that it was error to charge this section of the Code, because: (1) there was no evidence which authorized it in so far as it related to monomania; (2) there was no evidence in the record from which the jury was authorized to find, though the testator may have been afflicted with monomania, that the will resulted from or was connected with such monomania; and (3) the charge was confusing and misleading to the jury, since it submitted an issue which was not authorized by the evidence. When considered in connection with the

record, the complaint against this instruction is without merit. This ground amounts merely to a complaint that there was no evidence to support the caveat, and from what we have held in the 10th division of this opinion respecting the general grounds of the motion, it necessarily follows that the charge was adjusted to both the pleadings and the evidence. This being true, it was proper for the court to charge the section.

■ We now come to the principal grounds upon which the motion for new trial rests, viz.: That the verdict is contrary to law and the evidence, and strongly and decidedly against the weight of the evidence. The paramount question in the case is whether or not, in view of all the evidence, the testator was, at the time he made his will, afflicted with monomania from which his will resulted or with which it was connected. Monomania is a diseased condition of the mind and is distinguished from ill will, bad judgment, animosity, prejudice, erroneous conclusions from facts, illogical views, and other conditions of the mind which can be co-existent with sanity. The monomaniac is subject to hallucinations and insane delusions as to one or a few subjects and yet is perfectly rational as to others; he believes in the reality of events which have never occurred and in things which do not exist, and he is incapable of being permanently reasoned out of his erroneous conceptions. *Dyar* v. *Dyar,* supra (p. 628).

The will here involved was witnessed by the scrivener, who had not known the testator prior to the day his will was executed; by another, who knew him "very, very casually two or three years prior to his death;" and by a third person, who had known him principally through business transactions. One of the subscribing witnesses knew that the testator had a son, and with this exception none of the witnesses to the will knew the testator's family or his attitude toward its different members. The scrivener, however, did testify in substance that he got the impression from the testator, while he was preparing the will, that he would have provided more for his granddaughter except for her mother.

The plaintiffs in error rely very strongly upon the holding of this court in *Brumbelow* v. *Hopkins,* 197 *Ga.* 247 (29 S. E. 2d, 42). That case, however, is clearly distinguishable from the instant case. In the *Brumbelow* case the will was attacked for lack of general testamentary capacity, because of undue influence, and monomania.

On the question of monomania, Mr. Justice Grice, speaking for this court, said: "The ground of the caveat based on the allegation that the alleged testator was suffering from monomania, in that he believed the caveators had mistreated him, was not, in our judgment, supported by any of the proof submitted. There is evidence to the effect that the older children, the caveators, when their father was about to sell his real estate, signed some kind of a petition to prevent him from doing so, but that their purpose was abandoned, no court proceeding being filed; that their object was merely to protect their father, in his old age, from dissipating his property, there being no need for him to sell it; that their conduct was praiseworthy and disinterested, and did not amount to mistreatment of their father, and that he, on learning of their contemplated plan, was hurt with them. Proof of these facts, however, was insufficient to show that the instrument sought to be propounded was the result of monomania." In the instant case, it was alleged, as shown by the statement of facts, that the monomania from which the will resulted or with which it was connected was manifested by various insane delusions or hallucinations of the testator at the time he made the will, and the proof submitted was sufficient to support the allegations made.

The evidence was sufficient to authorize the jury to find in favor of the caveatrix, and against the probate of the purported will; and their verdict having the approval of the trial judge, this court will not disturb it. The trial judge did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur, except Candler, J., disqualified.*