SMITH v. DAVIS.

No. 16017.  November 12, 1947.  Rehearing denied December 2, 1947.

178

*Charles G. Reynolds,* for plaintiff in error.

*E. M. Price* and *Lewis & Lewis,* contra.

CANDLER, Justice. (After stating the foregoing facts.) ■ We deal first with the exceptions pendente lite. The provision made for the caveatrix by the testator's will was in lieu of a year's support and dower. Upon the ground that it constituted no defense, the court on motion struck that paragraph of the amended caveat which objected to probate upon the ground that the testator had by his will sought to settle her right to a year's support upon his own terms and conditions; and having applied for a year's support from the estate, she was, under the express provisions of the will, excluded therefrom as a legatee, and the will,

if probated, would vest the testator's entire estate in strangers. The exception is without merit. Whether the caveatrix, by her election to apply for a year's support, has or has not excluded herself as a beneficiary under the will of her husband, is not to be determined upon an application for probate. In such a proceeding the only issue is devisavit vel non, will or no will. *Wells* v. *Thompson*, 140 *Ga.* 119 (78 S. E. 823, 47 L. R. A. (N. S.) 722, Ann. Cas. 1914C, 898); *Johnson* v. *Ellis*, 172 *Ga.* 435 (158 S. E. 39); *Peavey* v. *Crawford*, 182 *Ga.* 782 (187 S. E. 13, 107 A. L. R. 828); *Shaw* v. *Fehn*, 196 *Ga.* 661 (27 S. E. 2d, 406).

■ Special grounds 4 to 10 and 14 to 17, both inclusive, are so related that they can be dealt with together. They are exceptions to rulings on the admissibility of evidence, the charge of the court, and refusals to charge. They are without merit, unless the testator, by the terms of his will, has left his estate to strangers to the exclusion of his widow, who would have been his sole heir at law had he died intestate. These several grounds of the amended motion are predicated upon the theory that the will of the testator did exclude his wife—they having no children —from the provisions of his will, and bequeathed his entire estate to strangers, and for that reason the issue made by the caveat should have been determined under the Code, § 113-106, which provides: "A testator, by his will, may make any disposition of his property not inconsistent with the laws or contrary to the policy of the State; he may bequeath his entire estate to strangers, to the exclusion of his wife and children, but in such case the will should be closely scrutinized, and, upon the slightest evidence of aberration of intellect, or collusion or fraud, or any undue influence or unfair dealing, probate should be refused."

This court in *Deans* v. *Deans*, 166 *Ga.* 555 (144 S. E. 116), in construing § 3832 of the Code of 1910 (Code, 1933, § 113-106), held that its provisions are applicable to a wife and child or children; a child or children where there is no wife; and to a wife alone where there is neither child nor children. On a second appearance of that case in this court (*Deans* v. *Deans*, 171 *Ga.* 664, 156 S. E. 691, 74 A. L. R. 222), it was held that the provisions of the section should be applied only in a case where a party covered by the statute was altogether excluded in the will. In that case the testator's son by a divorced wife was entirely ex-

cluded in his will. In the instant case, the plaintiff in error contends that the general rule which requires that any ground of caveat be established by a preponderance of the evidence was not applicable to the facts of her case, upon the theory she is entirely excluded in the will, and that no greater burden rested upon her to establish her grounds of caveat than those prescribed by section 113-106, which provides that, in all cases where the wife is excluded in the will, it shall be closely scrutinized, and upon the slightest evidence of aberration of intellect, or collusion, or fraud, or any undue influence or unfair dealing, probate should be refused.

The record shows, without dispute, that under the will here involved the caveatrix as the testator's widow would take, in lieu of dower and a year's support, at least one-half of his estate, which as a whole was valued at approximately $50,000. The plaintiff in error bases her contention that she is excluded in the will upon the proposition that any provision made for her under the will is in lieu of a year's support and dower; and since she has applied for a year's support, the legal effect of that proceeding is to wholly exclude her from the will and consequently pass the entire estate to strangers. True it is that a year's support for the widow and minor children is a part of the necessary costs of administration; but by the Code, § 113-1007, it is provided: "A testator may, by his will, make provision in lieu of this support for 12 months; in which case the widow may elect, under the same rules as regulate her election of dower." See also *Bass* v. *Douglas,* 150 *Ga.* 678 (104 S. E. 625). If, by reason of the caveatrix's application for a year's support, she has excluded herself from the provisions made for her by the will, as she contends, then for that situation she has no one to blame but herself. As we see the record, the testator made what would certainly appear to be a very substantial provision for her, and this being true, section 113-106 has no application to the facts; and since these several grounds of the amended motion are not meritorious, in the absence of its applicability, the court did not err in refusing to grant a new trial upon these grounds.

■ In special grounds 11, 12, and 13, error is assigned upon the refusal of the court to exclude certain testimony of the witness, Preston B. Lewis, relating to the conduct of the caveatrix,

and conversations had with her while the witness was at the testator's home conferring with him about the preparation of his will. Special ground 11 assigns error upon the refusal to exclude the following evidence: "Just as I turned to the left of the door leading out of his room and had nearly gotten to the bathroom, which was about two steps, I ran into a person. It was dark then. The person was Mrs. Smith. As I stepped to the left and started in the bathroom I ran into a person. I couldn't see who it was. As far as I knew, and as it turned out, there were only three persons in the house, Mr. Smith, in bed, and Mrs. Smith and myself. Mrs. Smith spoke and I recognized her then and excused myself and told her I didn't know she was in the bathroom. She didn't make any reply at that time. She went on back towards the kitchen as I recollect. She said, 'I was just getting ready to go in the room to take a mustard plaster off of Mr. Smith'." The objection urged is: "This case has been tried here once before and a good deal was said about the acts of Mrs. Smith. Now the question at issue in this case, is this the will of L. E. Smith. The acts of Mrs. Smith, anything she did, or anything that took place between her and Mr. Lewis, could not throw any light on the question as to whether or not this is the will of L. E. Smith. We object to testimony as to any such transaction and particularly to this testimony that Mr. Lewis is giving now on the ground that it is not germane to the issues in this case and not material to the issues."

In special ground 12, over the objection, "We object to that testimony on the grounds that it is not germane to the issue on trial, it is not relevant and material to the issue, and is hearsay, on the question of the mental state of Mr. Smith on whether or not he executed this will or whether or not this is in fact his will," the court permitted the witness to testify: "Mrs. Smith then went in the bedroom and I suppose she removed the mustard plaster. I didn't see her, but she said that was what she went in there for, and she came out. It was unusually cold for that time of the year, and I had gone over to the kitchen where there was a good fire burning while she was removing the mustard plaster. When she reached the kitchen she began to tell me that she thought Mr. Smith was very unfair to her and that he shouldn't have left his property in the way he did."

Special ground 13 complains that the witness was allowed to testify: "When Mrs. Smith returned from Midville, she came over to the kitchen where I was and she then expressed with great emphasis that Mr. Smith wasn't treating her right; that she had lived with him twenty years and he had no business leaving the property . . " over the objection, "We object to the testimony of any conversation between Mr. Lewis and Mrs. Smith on the ground that it is irrelevant and immaterial to the issues on trial and throws no light whatsoever on the question as to whether or not this is Mr. Smith's will, and on the additional ground that it is hearsay."

Even if it can be said that the objections made to the testimony of the witness are sufficient to present a question for consideration by this court, we think that they are wholly without merit. Mrs. Smith was not only a party, but testified as a witness in support of her caveat. The record contains statements attributed to her which would indicate that she was very much displeased because a will had been made, and with its provisions. She had said, according to the testimony of Dr. Mulkey: "He (Mr. Smith) had no business making a darn will;" and Preston B. Lewis, the scrivener, with respect to a conversation had with Mrs. Smith in his office on the day following the execution of the will, testified: "I had told her I was not open to any employment, and she sat down and stayed in my office some thirty minutes discussing the fact that the will wasn't fair to her and referred particularly to the fact that she didn't think Mr. Smith ought to have left all that property to that bastard child." The interest of a witness in the result or outcome of the case, especially where the witness is a party to the cause, may always be considered by the jury in passing upon his or her credibility. Code, § 38-1805; *Detwiler* v. *Cox,* 120 *Ga.* 638 (48 S. E. 142); *Brock* v. *Brock,* 140 *Ga.* 590 (79 S. E. 473). We think it quite obvious that the testimony objected to, when considered in connection with all of the other facts and circumstances disclosed by the record, did show such interest of the witness in the subject-matter of the suit that it was proper to let it go to the jury for use by them in determining what credit should be given to her testimony, and for that reason these grounds of the motion show no error.

■ In special ground 21 complaint is made because the court failed to charge the jury upon the caveatrix's contention that the will should not be probated and admitted to record, because it was executed by the testator while possessed of an insane delusion that he was the father of Lonnie Perkins, one of the beneficiaries named therein. We have carefully and critically looked at the record, and after doing so are of the opinion that it contains no evidence which would have authorized such a charge, much less require it. The testimony of the attending physicians, one of whom was present when the will was executed, the subscribing witness, and others who saw and observed the testator at the time his will was executed and immediately prior thereto, make what we think is a remarkably strong case in favor of testamentary capacity. The general rule is that a charge on legal principles must be adjusted to both the pleadings and the evidence. *Southern Express Co.* v. *Newby,* 36 *Ga.* 635 (5) (91 Am. D. 783) ; *McDonald* v. *DeLaPerriere,* 178 *Ga.* 54 (4) (172 S. E. 1) ; *Smoot* v. *Alexander,* 188 *Ga.* 203 (4) (3 S. E. 2d, 593) ; *Jones* v. *Hogans,* 197 *Ga.* 404, 412 (29 S. E. 2d, 568). With respect to the contention that the alleged testator was suffering from monomania, in that he believed Lonnie Perkins was his illegitimate son, the record shows that for twenty-five years, and longer, prior to the making of his will, and for some time prior to his marriage to the caveatrix, he had frequently stated to various members of his family that Lonnie Perkins was his illegitimate son, and that it was his intention to make provision for him in the disposition of his estate. That such relation did actually exist between the testator and Lonnie Perkins was accepted as true by the members of the testator's family. There was no proof to the effect that Lonnie Perkins did anything to foster such a belief in the mind of the testator. From the time when he was a small boy he did no more than accept as true the oft-repeated assertions of the testator that he was his illegitimate son. For a number of years he lived in the home of, and was sent to school by, the testator, and after leaving the home each frequently visited the other. The record shows no error because of the court's failure to charge upon the law of monomania. Compare *Brumbelow* v. *Hopkins,* 197 *Ga.* 247 (29 S. E. 2d, 42).

■ In his charge to the jury the judge said: "I charge you,

gentlemen, that the very nature of a will requires that it be freely and voluntarily executed, not necessarily months before, but what was his mental capacity at the time of the alleged execution of the will? Hence, anything which destroys this freedom of volition invalidates a will, such as fraudulent practices upon testator's fears, affections or sympathies, duress or undue influence, whereby the will of another is substituted for that of the testator." In special ground 8 error is also assigned upon this portion of the charge upon the ground that it is misleading and confused the law relating to testamentary capacity with that of undue influence. Except for the words, "not necessarily months before, but what was his mental capacity at the time of the alleged execution of the will," the charge is in the exact language of the statute. Code, § 113-208. Elsewhere in the charge the court said: "I charge you that, if you find that there was any undue influence or fraud or unfair dealings of any kind in the procurement of the execution of this will, the will should not stand and you should find against the will." He also charged: "Every person may make a will, unless laboring under some legal disability either from want of capacity or want of perfect liberty of action." As we see the charge as a whole, we think that the court gave a fair and complete charge upon both the question of testamentary capacity and the effect of undue influence; and in view of the overwhelming testimony showing testamentary capacity and the almost total absence of any evidence showing undue influence, we can not bring ourselves to believe that the jury was misled or confused by the use of the inapt words evidently inadvertently spoken while charging upon the law of undue influence. This ground of the motion is therefore without merit.

■ Complaint is made in special ground 9 to this portion of the charge—"A testator may be unable to transact business, or lack the mental capacity to contract, and still have sufficient capacity to make a will." That it is an incorrect statement of law and is in direct conflict with the law that an insane person can not make a will, is the criticism lodged against this instruction. The judge also charged the Code, § 113-202 in its entirety and that portion of § 113-204 which provides: "An insane person generally may not make a will. A lunatic may, during a

lucid interval." It is the law of this State that capacity to make a contract is not identical with the mental capacity necessary to make a valid will. A person with mental capacity less than that required to make a contract may have the degree of mental capacity necessary to make a valid will. Such has become the settled law of this State. *Talton* v. *Richardson,* 163 *Ga.* 553 (136 S. E. 526).

■ In special ground 10 exception is taken to the following portion of the charge: "Be the testator wise or unwise, he is capable of willing his property unless totally deprived of reason. If a testator be not a lunatic, idiot, or mentally incompetent, he may make a will, so far as capacity is concerned." The attack upon this part of the charge was that it is an incorrect statement of the law, the law being that a person can not make a valid will unless he has mental capacity sufficient to form a rational and decided desire that one person should have his property rather than another. But upon the subject of testamentary capacity the court also charged: "The amount of intellect necessary to constitute testamentary capacity is that which is necessary to enable the party to have a decided and rational desire as to the disposition of his property. His desire must be decided as distinguished from the wavering, vacillating fancies of a distempered intellect. It must be rational as distinguished from the ravings of a madman, the silly prating of an idiot, the childish whims of imbecility, or the excited vagaries of a drunkard." If it can be said that the criticism of that portion of the charge about which complaint is here made, standing alone, is meritorious, it ceases to be such when that portion is considered in connection with the further and additional charge upon the same subject. This court in *Brown* v. *Matthews,* 79 *Ga.* 1, speaking through Chief Justice Bleckley, said: "A charge, torn to pieces and scattered in disjointed fragments, may seem objectionable, although when put together and considered as a whole, it may be perfectly sound." By the charge as a whole the court correctly instructed the jury upon the issue of testamentary capacity, and there is no merit in this ground of the motion for the reason assigned.

■ In special grounds 18, 19, and 20 error is assigned upon the refusal to charge certain written requests relating to the

presumption of legitimacy of children born to parents living in lawful wedlock. In view of what has been said in another division of this opinion, these grounds are wholly without merit.

■ The evidence was amply sufficient to support the verdict, which has the approval of the trial judge, and there is therefore no merit in the general grounds of the motion for new trial.

All of the exceptions being without merit, it follows that the court did not err for any reason assigned in refusing to grant a new trial.

*Judgment affirmed. All the Justices concur, except Wyatt, J., who took no part in the consideration or decision of this case. Duckworth, P. J., concurs in the judgment.*