BOWMAN *v.* BOWMAN.

No. 16731.  SEPTEMBER 16, 1949.

798

804

*Poole, Pearce & Hall* and *Margaret Hills*, for plaintiff in error. *James L. & Will G. Moore*, and *Harris, Henson & Spence*, contra.

HAWKINS, Justice. (After stating the foregoing facts.) ▮ It is insisted by counsel for the defendant in error that the 4th and 5th grounds of the amended motion for a new trial, assigning error upon the direction of a verdict, are not in such form as to be considered by the court, for the reason that they are not complete within themselves in that they do not contain "the evidence pertinent to the points sought to be raised in these grounds;" that such evidence should have been isolated from the mass of evidence contained in the brief and put in these grounds, and that the court should not be required to read more than one hundred pages of testimony to determine whether they are good. It is contended that the plaintiff in error is relegated to such assignments as relate to the general grounds, and that the only question presented is whether the verdict was contrary to the evidence, decidedly and strongly against the weight of the evidence, without evidence to support it, and contrary to the principles of justice and equity. Counsel for the defendant in error cite in support of this contention the following cases: *Mobley* v. *Russell*, 174 *Ga.* 843, 847 (164 S. E. 190), *Owens* v. *Nichols*, 139 *Ga.* 475 (5) (77 S. E. 635), and *Bowen* v. *Smith-Hall Grocery Co.*, 146 *Ga.* 157 (4) (91 S. E. 32).

In the *Mobley* case, supra, the assignment of error dealt with was one complaining that the court erred in allowing portions of the pleadings and evidence to be read to the jury; and it was there held that, since the portions of neither the pleadings nor the evidence, which were alleged to have been read to the jury, were set out in substance or attached as an exhibit, the ground was incomplete and would not be considered. In the *Owens* case, supra, it was held: "Where complaint is made of refusal of the judge to admit in evidence the opinion of a non-expert witness, the facts upon which the opinion is based should be set out in the ground of the motion." In the *Bowen* case, supra, this court was dealing with assignments of error, complaining of certain excerpts from the charge of the court, which merely al-

leged that "this charge was error for reasons stated in" other numbered grounds, and this court held that grounds of the motion for a new trial should be complete within themselves, and that, when a particular ground is under consideration, reference to other grounds should not be required in order to understand the assignment of error. Many other cases might be cited wherein it has been held that grounds of a motion for a new trial, complaining of the admission or rejection of evidence, charges of the court, and other similar matters, should be complete within themselves and should not require reference to other parts of the record in order to ascertain what the evidence admitted or rejected was, or its materiality, or the grounds of objection thereto, or to the charge of the court. But such rulings have no application to the assignments of error in the 4th and 5th grounds of the motion for a new trial in the present case. The question presented by these grounds is whether there was any evidence adduced upon the trial raising issues of fact which should have been submitted to the jury, or whether the evidence introduced would authorize the jury to return a verdict different from that directed; for, unless all the evidence together with all reasonable inferences or deductions that might have been drawn therefrom demanded the particular verdict directed, the trial court erred in directing it. The 4th and 5th grounds of the amended motion specifically allege that the court erred in directing the verdict because there were issues of fact which should have been submitted to the jury, and evidence introduced which would have authorized the jury to find a different verdict from that directed by the court. To the overruling of the motion contained in these grounds exception is taken in the bill of exceptions, and this court has held that this is a sufficient assignment of error. *Bosworth* v. *Nelson,* 172 *Ga.* 612 (158 S. E. 306); *Mullis* v. *McCook,* 185 *Ga.* 171 (194 S. E. 171); *Ford* v. *Ford,* 203 *Ga.* 681 (47 S. E. 2d, 865).

Since an examination of all the evidence is required in order to pass upon these assignments of error, the brief of evidence must be looked to by this court, for it would unnecessarily encumber and enlarge the record to require that the entire evidence be set out in these grounds of the amended motion.

■ Counsel for the plaintiff in error state in their brief that

"the only question here involved is whether or not sufficient evidence of undue influence and/or monomania was adduced upon the trial to make an issue of fact for decision by the jury."

In approaching this question we are not unmindful of the rulings by this court to the effect that, while undue influence may be proved by circumstantial evidence, it is not sufficient to establish undue influence to show merely that the persons receiving substantial benefits under the instrument sought to be propounded occupied a confidential relationship to the testator and had an opportunity to exert undue influence. *Norman* v. *Hubbard*, 203 *Ga.* 530 (47 S. E. 2d, 574), and cases cited.

The Code, § 113-208, provides: "The very nature of a will requires that it should be freely and voluntarily executed; hence, anything which destroys this freedom of volition invalidates a will; such as fraudulent practices upon testator's fears, affections, or sympathies, duress or any undue influence, whereby the will of another is substituted for the wishes of the testator."

In Redfearn on Wills and Administration of Estates (Rev. Ed.), § 52, it is said: "A very wide range of testimony is permissible on the issue of undue influence. This is due to the fact that undue influence seldom can be shown except by circumstantial evidence. It results from the circumstances and surroundings of the testator and his associations with the person or persons exercising the undue influence. For this reason it is proper, on this issue, to consider the testator's dealings and associations with the beneficiaries; his habits, motives, feelings; his strength or weakness of character; his confidential family, social, and business relations; the reasonableness or unreasonableness of the will; his mental and physical condition at the time the will was made; his manner and conduct; and generally every fact which will throw any light on the issue raised by the charge of undue influence."

On the issue of undue influence, the rules of evidence take into account the peculiar circumstances surrounding the issue; and acts, conduct, and circumstances may constitute undue influence when exercised on a person of failing mind, poor health, and other mental and bodily enfeeblements which would not be such undue influence as to void a will executed by a person of sound mind, good health and intelligence. *Pennington* v. *Kerrigan,* 159

*Ga.* 345 (125 S. E. 795); *Boland* v. *Aycock,* 191 *Ga.* 327 (12 S. E. 2d, 319).

In *Fowler* v. *Fowler,* 197 *Ga.* 53 (2) (28 S. E. 2d, 458), it was held: "An attack on a will as having been obtained by undue influence may be supported by a wide range of testimony, since such influence can seldom be shown except by circumstantial evidence. Thus, a confidential relation between the parties, the reasonableness or unreasonableness of the disposition of the testator's estate, old age, or disease affecting the strength of the mind, tending to support any other direct testimony or any other proved fact or circumstance going to show the exercise of undue influence on the mind and will of the testator, are relevant. While the quantity of influence varies with the circumstances of each case, according to the relations existing between the parties and the strength or weakness of mind of the testator, the amount of influence necessary to dominate a mind impaired by age or disease may be decidedly less than that required to control a strong mind. *Dean* v. *Littleton,* 161 *Ga.* 651 (4), 654 (131 S. E. 507); *Stephens* v. *Bonner,* 174 *Ga.* 128 (162 S. E. 383); *Evans* v. *Arnold,* 52 *Ga.* 169 (4), 182; *Walker* v. *Roberts,* 20 *Ga.* 15, 25; *Smith* v. *Smith,* 75 *Ga.* 477 (4); *Davis* v. *Frederick,* 155 *Ga.* 809 (5-7) (118 S. E. 206); *Peretzman* v. *Simon,* 185 *Ga.* 681 (196 S. E. 471); *Griffin* v. *Barrett,* 185 *Ga.* 443 (195 S. E. 746); *Gaither* v. *Gaither,* 20 *Ga.* 709, 721; Code, § 37-706; *Trustees of Jesse Parker Williams Hospital* v. *Nisbet,* 191 *Ga.* 821 (14 S. E. 2d, 64)."

It must also be borne in mind that this case, in which the testator's wife was altogether excluded by the terms of the will, and the testator's property was devised to a stranger (*Deans* v. *Deans,* 166 *Ga.* 555, 144 S. E. 116), comes within the terms of Code § 113-106, which provides: "A testator, by his will, may make any disposition of his property not inconsistent with the laws or contrary to the policy of the State; he may bequeath his entire estate to strangers, to the exclusion of his wife and children, but in such case the will should be closely scrutinized, and, upon the slightest evidence of aberration of intellect, or collusion or fraud, or any undue influence or unfair dealing, probate should be refused."

In *Deans* v. *Deans,* 171 *Ga.* 664, 681 (156 S. E. 691, 74 A. L.

R. 222), it is pointed out that, under the general rules of evidence, every presumption is in favor of the probate of a will after it is shown that the testator was of sound mind and disposing memory at the time the will was executed; but that, under the provisions of Code § 113-106, if it appears that the testator has excluded his wife, and that he has no child, "there is but little, if any, presumption in favor of the propounder; for the will is to be closely scrutinized, and upon the *slightest* evidence of aberration of intellect, *or* collusion, *or* fraud, *or* any undue influence *or* unfair dealing, probate should be refused. Rules as to the nature of proof and the quantum of evidence necessary for a caveator to produce and present to the court and jury, in ordinary cases of probate of wills, can have no application in the face of the declaration that probate of a will of the class referred to in section 3832 [Code, § 113-106] should be refused upon the *slightest* evidence of any of the ingredients or operative causes set forth in the Code section. The law does not define the term 'slightest evidence,' but it is the superlative degree of the adjective slight, and therefore must mean *very* slight. In other words, to use the language of Chief Justice Bleckley, if we are to 'let the General Assembly charge the jury in its own words,' the legislature tells the jury 'that very slight evidence (in a case coming within the terms of section 3832, and to which that Code section is applicable) of aberration of intellect, or collusion, or fraud, or any undue influence or unfair dealing, if you believe it is true, will make it your duty to refuse probate of the will.'" See also *Smith* v. *Davis*, 203 *Ga.* 175 (2), (45 S. E. 2d, 609).

It is true that there is no direct evidence in the record in this case that the propounder and devisee under the will ever mentioned the question of a will or the disposition of his property to the testator; but—considering the testimony as to the testator's physical and mental condition, and the apparent control exercised over him by his brother in connection with the fact that the decedent's letters to his wife indicated that the relationship existing between them was friendly and affectionate up until the time he suffered the cerebral hemorrhage, the filing of the divorce petition only nine days after he returned to Atlanta from Pensacola at the insistence of his brother, the fact that he

repeatedly denied to the caveatrix any responsibility for the divorce petition, or for the refusal of her letters addressed to him, and the letter which he wrote the caveatrix about two weeks after his final visit to Pensacola, expressing his love to her—it cannot be said that there was not the slightest evidence from which a jury might have found that the decedent was so completely under the domination and influence of his twin brother that he was unable to assert his own wishes and desires, and unable to make a will which would reflect his own thought.

It is clearly apparent from the allegations of the divorce suit filed by the testator against the caveatrix that he was laboring under the belief that his wife was having improper relations with other men and another woman, and was trying to poison him, and from the third item of the will, that his wife had failed and refused to care for him while he was ill and incapable of caring for himself, when the caveatrix testified that she had throughout her married life been devoted to the decedent and had at all times sought to make him a loving, virtuous, and devoted wife, and that she had cared for him for a period of more than six months during his illness and would have continued to do so, but for the acts of the testator's twin brother which prevented it. It is also true that there is no direct evidence to support the allegations of the 3rd ground of the caveat, that these beliefs on the part of the testator were induced by representations on the part of his brother Fred, and members of Fred's family, but such proof is not necessary in order to show that the deceased was suffering from monomania. That such belief did exist is clearly apparent from the statements contained in the divorce petition and the will. Whether they were or were not well founded, or whether they were insane delusions, and if such, whether the will excluding the wife was the result of such delusions, are questions which it would seem to us must be determined by the jury, and not by the court. *Bohler* v. *Hicks*, 120 *Ga.* 800 (48 S. E. 306) ; *Dibble* v. *Currier*, 142 *Ga.* 855 (83 S. E. 949) ; *Yarbrough* v. *Yarbrough*, 202 *Ga.* 391 (43 S. E. 2d, 329).

While the admissions by the caveatrix on the trial of a prima facie case in favor of the propounder, or the evidence, introduced by the propounder, if standing alone, would have required the verdict directed by the court, the evidence, taken as a whole,

814

was sufficient to raise an issue on the grounds of undue influence and monomania, which the jury should have been permitted to determine, and the trial court erred in directing a verdict for the propounder.

*Judgment reversed. All the Justices concur.*