## 58303. GRAGG et al. v. NEUROLOGICAL ASSOCIATES et al.

SMITH, Judge.

Appellants, Mr. and Mrs. C. A. Gragg, brought this malpractice action for damages allegedly occurring when an angiogram was performed upon Mr. Gragg. We agree with appellants' contention that the trial court erred in concluding the Good Samaritan Statute to be applicable, and we therefore reverse the court's grant of summary judgment to appellee, Dr. William Spenser.

After experiencing severe headaches, difficulty in walking, and a trembling seizure, Mr. Gragg visited Dr. Peter Reitt. Dr. Reitt's initial diagnosis was uncertain, and he recommended conducting an angiogram upon Gragg at Crawford W. Long Hospital. The procedure entails insertion of a catheter into each of the two carotid arteries, which supply blood to the brain. The catheter first is inserted into the femoral artery, located in the groin region, and then is carefully moved up through the vascular system to the left carotid artery. A contrast material is injected into the left artery, and later into the right, and X-rays are obtained which would indicate whether there is any blockage or occlusion present.

X-rays were successfully taken of Gragg's left carotid artery, but Dr. Reitt encountered difficulty in endeavoring to maneuver the catheter from the left to the right carotid artery. Not wishing to abandon the test or attempt to utilize the alternative, riskier method, which is to puncture directly into the artery through the neck, Dr. Reitt summoned appellee, Dr. Spenser, who was present in the hospital but not in the operating room. Dr. Reitt's testimony as to his decision went as follows: "I recall distinctly asking at that point if Dr. Spenser were in the suite and the reason was because I could have attempted — and it's been done by others I'm sure — several times more to cannulate this vessel or I could have directly punctured the common carotid artery in the neck but both of these maneuvers would have involved more risk and I felt that another pair of hands might possibly put the catheter in the correct vessel whereas I couldn't and so I had Dr. Spenser come into the suite . . . Well, we actually

could have taken a lot longer as this procedure can run two, two and a half hours, but I didn't feel that was necessary or really indicated. I thought we should do what we needed to do as soon as reasonably possible . . . I would have not called him in especially had he not been there at the time. I felt quite strongly and I do recall this, that there was no sense in my attempting to cannulate a vessel I was having difficulty with when there was somebody else that could possibly do it. Otherwise, I obviously would have cannulated that vessel or could have done a direct percutaneous or through the skin injection of the carotid artery as we used to do prior to the catheter technique becoming available . . . [the difficulty Dr. Reitt experienced] happens occasionally with patients."

Dr. Reitt had performed, prior to this occasion, approximately three hundred angiograms. A slight risk of stroke always accompanies the procedure. Dr. Spenser was a specialist in the test, and he responded to Dr. Reitt's request for aid. In about three minutes, with Dr. Reitt at his side Dr. Spenser succeeded manipulating the catheter into the desired position, "with a little difficulty." He then departed from the operating room. The two doctors had been co-residents for years and quite often consulted with one another on cases.

Fifteen minutes after completion of the angiogram, Mr. Gragg suffered a stroke. The attack left him with permanent total paralysis of the left arm and hip and with permanent partial loss of the use of the left arm and hand.

Solely on the basis of the Good Samaritan Statute, Ga. L. 1962, p. 534 (Code Ann. § 84-930), the trial court granted summary judgment to appellee Spenser. That statute provides: "Any person, including those licensed to practice medicine and surgery pursuant to the provisions of this Chapter, and including any person licensed to render service ancillary thereto, who in good faith renders emergency care at the scene of an accident or emergency to the victim or victims thereof without making any charge therefor, shall not be liable for any civil damages as a result of any act or omission by such person in rendering the emergency care or as a result of any act or failure to act to provide or arrange for further medical treatment or care for the injured person." We believe the Good

Samaritan Statute is inapplicable to the factual situation before us. Here Mr. Gragg was receiving the care of a qualified, experienced physician, Dr. Reitt, before Dr. Spenser's arrival in surgery. Dr. Reitt had performed the angiogram on three hundred occasions prior to this one and was aware of the possibility that the difficulty which he encountered could occur. The deposition testimony also showed that the discontinuance of the angiogram would not itself have placed Gragg's health in any immediate danger and that Dr. Reitt was fully capable of proceeding on alone in face of the complication and would have chosen to do so, had Dr. Spenser not been available. We hold that, as a matter of law, the hardship encountered here during the process of a diagnostic procedure being conducted by an experienced physician did not constitute such an accident or emergency as would invoke the provisions of the Good Samaritan Statute. See generally Colby v. Schwartz, 78 Cal. App. 3d 885 (144 Cal. Rptr. 624) (1978).

*Judgment reversed. Quillian, P. J., and Birdsong, J., concur in the judgment only.*

ARGUED SEPTEMBER 10, 1979 — DECIDED NOVEMBER 28, 1979.

*Jerry L. Sims,* for appellants.
*Robert G. Tanner, Sidney F. Wheeler,* for appellees.