70413. GRAGG et al. v. NEUROLOGICAL ASSOCIATES et al.
(336 SE2d 608)

BEASLEY, Judge.

This medical malpractice action has made two prior appearances in our court. In the previous appeals summary judgment for an individual defendant was reversed. See *Gragg v. Neurological Assoc.,* 152 Ga. App. 586 (263 SE2d 496) (1979); *Gragg v. Spenser,* 159 Ga. App. 525 (284 SE2d 40) (1981). The complaint by the Graggs seeking damages resulting from an angiogram being performed on Mr. Gragg has finally been tried resulting in a verdict for the defendants. The Graggs now appeal and assert error solely on the trial court's refusal to exclude three jurors for cause.

During the plaintiff's voir dire the following question was asked: "Have you ever had an experience with a physician or with a hospital which was so good that you feel obligated to the medical profession or which was so bad that you feel biased against them?" Among others, Jacqueline Miles and Elizabeth Hipp answered affirmatively.

In response to follow-up questions Ms. Miles answered that she had had a good and bad experience; that she did not think patients should sue doctors and it would be difficult for her to render a verdict for plaintiffs in a medical malpractice case. A conference out of the jury's presence was then held at which the trial court explained that all professionals make mistakes and further questioned the witness if she could be fair and was assured by the witness that she could be. The trial court then inquired: "If the evidence, hypothetically, were such that there was negligence, that you found the doctor negligent,

because he was a doctor you wouldn't hold him responsible?" Ms. Miles replied: "Oh, no. I wouldn't simply because he was a doctor."

Ms. Hipp responded to further questioning by stating she had emergency surgery fifteen years previously which "was very good surgery"; that she did not know whether her surgery would incline her to favor doctors or hospitals in medical malpractice cases but it "might" influence her; that she could not assure counsel she would be absolutely neutral or impartial. The trial court interrogated the witness outside the jury's presence asking if she said she did not think she could be fair and received the response "I said I wasn't sure"; the witness also stated she did not believe in suing people. The court then stated: "No one wants to sue. You sue if you have to. You don't fault them because you sue. They have that right. What if they stopped suing?" To which the juror responded: "I don't know. I guess I'd have to be neutral."

Subsequently on voir dire to the panel the following question was asked: "Assume that the evidence in this case justifies a very large verdict, say in excess of a million dollars, just hypothetically. Would any of you have difficulty in returning a verdict in that amount if the evidence justified it and it was in accordance with the charge of the court, simply because it was so much money?" Winifred Klein responded affirmatively.

Ms. Klein subsequently was questioned about her personal difficulty in returning a large verdict and responded "a tremendous one." When asked if the fact she had relatives who were physicians would incline her to give doctors the greater benefit of the doubt than the average person would, she answered "I don't think so. I might." She also stated she had several relatives who were lawyers.

The trial court conducted a hearing out of the jury's presence in which it was emphasized that the essential factor was whether the juror could be fair. The juror stated she did not "believe in astronomical awards" such as "well over a million, several million dollars." As to whether she could be fair, Ms. Klein responded "I think I could be fair. I just couldn't award an astronomical amount." The trial court then asked: "But just assume he's able to prove his client deserved three million dollars, would you ignore that and say that's too high because it's astronomical regardless of the evidence?" Ms. Klein replied: "If he could prove it was worth that, then that's all right. I'd accept it."

"The trial judge has a discretion in determining whether a juror can decide the case in accordance with the evidence presented during the trial and without bias or partiality or outside influences." *Hill v. Hosp. Auth.,* 137 Ga. App. 633, 636 (224 SE2d 739) (1976). See *Westbrook v. State,* 242 Ga. 151, 154 (3) (249 SE2d 524) (1978), which noted the propriety of the court's ruling regarding such matter "ab-

sent some manifest abuse of discretion."

"In order to disqualify a juror for cause, it must be established that the juror's opinion is so 'fixed and definite that it would not be changed by evidence or charge of the court upon the trial of the case.' " *Sullens v. State,* 239 Ga. 766 (1) (238 SE2d 864) (1977). Accord *Carter v. State,* 252 Ga. 502, 506 (8) (315 SE2d 646) (1984). In *Grasham v. Southern R. Co.,* 111 Ga. App. 158, 160 (4) (141 SE2d 189) (1965), this court found no disqualification where "[i]t did not appear that the juror had a firm or fixed opinion which he was unwilling to yield to the appropriate instruction of the court concerning the law."

Here none of the jurors' beliefs or opinions was so fixed as not to yield to the evidence and the instructions of the court or as would prevent the juror from arriving at a fair verdict. *Cone v. Johnson,* 251 Ga. 371, 372 (2) (306 SE2d 244) (1983); *Godfrey v. Francis,* 251 Ga. 652, 661 (9) (308 SE2d 806) (1983). It was demonstrated that they believed they could be fair and neutral in this specific case despite their general predispositions due to life experiences and relationships unrelated to this case.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED OCTOBER 22, 1985.

*Jerry L. Sims,* for appellants.

*Robert G. Tanner, William L. Ballard, David H. Tisinger, Kevin B. Buice, Michael G. Frick, Mark F. Dehler, John E. Hall, Jr.,* for appellees.